**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Adiran Tawyesva-Ortiz,

Defendant.

No. CR-26-05926-001-TUC-JCH (MAA)

**ORDER**

Before the Court is Defendant Adiran Tawyesva-Ortiz's Motion for Review of Magistrate Judge's Order of Detention ("Motion") (Doc. 12), filed under 18 U.S.C. § 3145(b). The Government opposes the Motion. Doc. 14. Defendant requests a hearing and oral argument. Having reviewed *de novo* the record before Magistrate Judge James E. Marner and the parties' briefing and exhibits, the Court denies the Motion.

## I. BACKGROUND

### A. Alleged Conduct

The following facts are drawn from the Complaint (Doc. 1), the Government's proffer (Doc. 14), and the Pretrial Services Reports (Docs. 5, 6). At a detention hearing, the parties may proceed by proffer, 18 U.S.C. § 3142(f), and Defendant does not dispute the Government's account of the investigation or of his post-*Miranda* statements.

The National Center for Missing and Exploited Children forwarded two CyberTips, received by the Arizona Internet Crimes Against Children Task Force in May 2025 and January 2026, reporting sexually explicit Instagram conversations between a minor male

whose account listed his age as fourteen ("Minor Victim 1") and two different accounts. Doc. 1 at 1; Doc. 14 at 2. Investigators later attributed both accounts to Defendant. *Id.* In the May 2025 chats, the account user repeatedly urged Minor Victim 1 to engage in oral sex with another child ("Minor Victim 2"), who was eleven years old, and to record it; the user gave directions about how to frame the video and asked that the recording be longer. Doc. 1 at 2; Doc. 14 at 2, 4. Later messages indicate that the sexual act occurred. *Id.* On January 3, 2026, the user asked Minor Victim 1 for an image of his genitals. *Id.*

Minor Victims 1 and 2 lived as foster children in a Tucson home along with twelve other children ranging in age from six months to thirteen years. Doc. 14 at 2–3; Doc. 5 at 2. One of the home's owners identified Defendant as her grandson and told agents that he had regular access to the home and visited about once a month. Doc. 1 at 2; Doc. 14 at 2–3. In a forensic interview, Minor Victim 1 stated that he believed he had been communicating with a girl named "Alexis," whom he considered his girlfriend; "Alexis" sent him sexually explicit images and asked him for images of himself, which he sent; and he stopped responding when "Alexis" began asking for content he considered "weird." Doc. 14 at 3.

On October 2, 2026, agents executed a search warrant at Defendant's residence in Sells, Arizona. Doc. 1 at 2. After receiving *Miranda* warnings, Defendant admitted that he operated both Instagram accounts; posed as a female and that Minor Victim 1 never knew his true identity; requested and received nude images and masturbation videos from Minor Victim 1; asked Minor Victim 1 to perform sexual acts with Minor Victim 2 and received a video of the two children engaged in oral sex; used multiple phones to carry out this activity; and had done the same thing to another minor in the past. *Id.*; Doc. 14 at 3–4. Agents found child sexual abuse material on both of Defendant's phones, including a video of Minor Victim 1 and a screen-recorded video of a different juvenile male ("Minor Victim 3"). Doc. 14 at 4.

///

///

**B. Procedural History**

Defendant was charged by Complaint with attempted production of child pornography in violation of 18 U.S.C. § 2251(a) and (e). Doc. 1. At his initial appearance on October 5, 2026, he was temporarily detained pending a substance-use treatment assessment. Doc. 6 at 1; Doc. 14 at 4. Pretrial Services initially recommended detention. Doc. 5 at 4. It identified Defendant's grandmother as a suitable third-party custodian but expressed concern that the family residence in Sells is close to a school and to neighbors with children. *Id.* at 2, 4. Defendant reported to Pretrial Services daily marijuana use, cocaine use about twice a month since January 2026, and weekend alcohol use, and stated that he was not then interested in treatment; his grandmother reported that he does not use alcohol or drugs. *Id.* at 3. The arresting agent reported that Defendant said he was suicidal on October 2, 2026. *Id.*

On October 15, 2026, Community Bridges[1] assessed Defendant and found him suitable for residential treatment, with a bed available October 20, 2026. Doc. 6 at 1. In its October 19 Addendum, Pretrial Services continued to assess Defendant as a danger to the community but recommended release to Community Bridges on conditions including remote computer and internet monitoring, location monitoring with home detention, and a prohibition on being alone with minors. *Id.* at 2–5. Pretrial Services found Defendant's brother unsuitable as a third-party custodian because he lives at the Sells residence, which it continued to view as unsuitable due to its proximity to a school and to neighboring homes with children. *Id.* at 2. Defendant's grandmother reported that he has no alternative residence outside Sells, although a cousin in Tucson may be able to assist with housing after her lease ends in December 2026. *Id.*

Following a detention hearing on October 19, 2026, Judge Marner found the

[1] Community Bridges, Inc. is an Arizona nonprofit behavioral health provider, founded in Mesa in 1982, that offers substance-use and mental-health treatment, including residential treatment and crisis services. *See* Benchmark Human Services, *Benchmark Human Services and Community Bridges, Inc. Form Partnership; Begin Crisis Services in OK* (Oct. 13, 2022), https://benchmarkhs.com/2022/10/13 (last visited Nov. 6, 2026). It is a treatment program, not a secure facility. Under the conditions Pretrial Services proposed, program staff could ask the U.S. Marshals Service to remove Defendant for noncompliance and place him in temporary custody. Doc. 6 at 4–5.

rebuttable presumption under 18 U.S.C. § 3142(e)(3)(E) applied and had not been rebutted, and the Government had shown by clear and convincing evidence that Defendant is a danger to the community and no condition or combination of conditions will reasonably assure the safety of the community. Doc. 8 at 1–2. Judge Marner adopted the Pretrial Services Reports as further findings, but not Pretrial Services' recommendation, and did not find Defendant to be a flight risk. *Id.* at 2.[2]

On October 28, 2026, a grand jury returned a five-count Indictment charging Defendant with attempted production of child pornography on or about January 3, 2026, in violation of 18 U.S.C. § 2251(a) and (e) (Count 1); attempted coercion and enticement of a minor on or about January 3, 2026, in violation of 18 U.S.C. § 2422(b) (Count 2); receipt of child pornography on or about January 19, 2024, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Count 3); and two counts of possession of child pornography on or about October 2, 2026, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), based on two separate iPhones (Counts 4 and 5). Doc. 9. The Government represents that Count 3 involves Minor Victim 3. Doc. 14 at 4. Defendant filed the Motion on October 30, 2026 (Doc. 12), and the Government responded on November 5, 2026 (Doc. 14).

## II. LEGAL STANDARD

When a magistrate judge issues a detention order pursuant to 18 U.S.C. § 3142, a defendant may request that the order be reviewed by the district court. 18 U.S.C. § 3145(b). The district judge reviews the magistrate judge's detention order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The district court is not required to hold a new evidentiary hearing and may rely on the record developed before the magistrate judge or take additional evidence where appropriate. *See id.*

Under the Bail Reform Act, a defendant must be released pending trial unless the court finds that "no condition or combination of conditions will reasonably assure the

---

[2] The Motion states that the detention order was entered on September 20, 2026, after a hearing held September 19, 2026, and that Pretrial Services found Defendant's brother to be a suitable third-party custodian. Doc. 12 at 1–2. The record reflects that the hearing was held on October 19, 2026 (Doc. 7) and the order entered on October 20, 2026 (Doc. 8 at 3), and that Pretrial Services found Defendant's brother *not* suitable (Doc. 6 at 2).

appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "In our society[,] liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Only in rare circumstances should release be denied, and doubts regarding the propriety of release are resolved in the defendant's favor. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). The Government must prove dangerousness by clear and convincing evidence and risk of flight by a preponderance of the evidence. 18 U.S.C. § 3142(f)(2)(B); *id.* at 1406–07; *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where there is probable cause to believe that a defendant committed certain offenses involving a minor victim—including violations of 18 U.S.C. §§ 2251, 2252(a)(2), and 2422—a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(e)(3)(E). The presumption shifts a burden of production to the defendant, but the burden of persuasion remains with the Government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if rebutted, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* (citation omitted).

In determining whether any conditions will suffice, the Court considers (1) the nature and circumstances of the offense charged, including whether the offense involves a minor victim; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that release would pose. 18 U.S.C. § 3142(g). The weight of the evidence is the least important factor, and the Court may not make a preliminary determination of guilt. *Motamedi*, 767 F.2d at 1408; *Gebro*, 948 F.2d at 1121.

///

///

///

## III. DISCUSSION

### A. Request for Hearing

Defendant requests a hearing but does not specifically identify any evidence that was not before Judge Marner, other than three letters from staff of the Tohono O'odham Community College apprenticeship program attached to the Motion. Docs. 12-1, 12-2, 12-3.[3] The Court has considered those letters and accepts their contents for purposes of this Motion. Defendant does not dispute the Government's proffer of the investigation, his own admissions, or the evidence recovered from his phones, nor does he dispute the contents of the Pretrial Services Reports. The parties' disagreement concerns how the § 3142(g) factors should be weighed and whether the proposed conditions are adequate, questions the Court can resolve on the existing record; a hearing is not necessary. *See Koenig*, 912 F.2d at 1193.

### B. Rebuttable Presumption

The Indictment establishes probable cause that Defendant committed the offenses charged in Counts 1 through 3, each of which is enumerated in § 3142(e)(3)(E). The presumption therefore applies, and Defendant does not argue otherwise. *See* Doc. 12 at 3, 6. Defendant's burden of production is not heavy, and Judge Marner found the presumption unrebutted. Doc. 8 at 1. Even assuming that Defendant's lack of criminal history, lifelong ties to Southern Arizona, family support, employment, and willingness to enter treatment are sufficient to rebut the presumption, the Court concludes, weighing the presumption together with the § 3142(g) factors, that the Government has carried its burden of persuasion. *See Hir*, 517 F.3d at 1086.

### C. Section 3142(g) Factors

#### 1. Nature and Circumstances of the Offenses Charged

The first factor weighs in favor of detention. Section 3142(g)(1) directs the Court to consider specifically whether the offense involves a minor victim, and every count of the Indictment does. The charges are among the most serious in the federal code. If convicted on Count 1, Defendant faces a mandatory minimum of fifteen years' imprisonment, 18

---

[3] The record does not reflect whether these letters were presented to Judge Marner. Two are dated October 6–7 and one October 16, 2026.

U.S.C. § 2251(e); on Count 2, a mandatory minimum of ten years and a maximum of life, *id.* § 2422(b); and on Count 3, a mandatory minimum of five years, *id.* § 2252(b)(1).

Defendant argues that the case is "not typical" because he is young, the victim is "a known family friend rather than a random stranger," and the victim is fifteen. Doc. 12 at 5. The record does not support these distinctions. Minor Victim 1 was fourteen at the time of the conduct charged in Counts 1 and 2. Doc. 14 at 4; Doc. 1 at 1. The alleged conduct was not limited to soliciting images from Minor Victim 1; it included directing him to perform a sexual act on an eleven-year-old child and to record it. Doc. 14 at 2–4. The victims' connection to Defendant does not mitigate the danger. Minor Victims 1 and 2 were foster children in a home Defendant regularly visited, which housed twelve other young children. *Id.* at 2–3. That Defendant targeted children within his own extended family's orbit, while concealing his identity from them, heightens rather than lessens the concern. The alleged conduct also extended beyond production to receipt and possession of child sexual abuse material involving at least one additional minor. Doc. 9; Doc. 14 at 4.

**2. Weight of the Evidence**

The weight of the evidence is the least important factor, and the Court does not consider it as a judgment about guilt. *Motamedi*, 767 F.2d at 1408. Nonetheless, the evidence bearing on Defendant's dangerousness is substantial: Defendant's post-*Miranda* admissions, corroborated by the CyberTip records; the Instagram communications; Minor Victim 1's forensic interview; the identification of Minor Victim 1 by the occupants of the Tucson home; and the material recovered from Defendant's two phones. Doc. 14 at 7–9. Defendant does not contest this evidence in his Motion. This factor weighs in favor of detention.

**3. History and Characteristics of Defendant**

This factor favors Defendant. He is twenty-two years old, a lifelong Arizona resident, and a member of the Tohono O'odham Nation, with no prior criminal history and no history of failing to appear. Doc. 5 at 2–4; Doc. 12 at 1. He has strong family support. Doc. 5 at 2. He has been enrolled for two years in the Tohono O'odham Community

College plumbing apprenticeship, where his instructors describe him as a dependable leader who returns on his own time to finish repairs for the Nation's elders. Docs. 12-1, 12-2, 12-3. He was not on supervision at the time of the alleged offenses. The Court also recognizes the profound trauma Defendant has experienced, including witnessing his father's violent death, losing his brother, and being sexually abused as a child. Doc. 12 at 4–5; Doc. 6 at 2. Those circumstances are relevant, and the Court has weighed them.

However, other considerations weigh against release. The Court must consider Defendant's "past conduct." 18 U.S.C. § 3142(g)(3)(A). Defendant characterizes the alleged offense as "an isolated event" and asserts that there is no evidence of "a prior history of similar conduct." Doc. 12 at 6. This characterization predates and does not account for the Indictment. The record reflects that Defendant admitted engaging in the same conduct with another minor before Minor Victim 1; a second identified minor, Minor Victim 3, appears in material recovered from his phone; and Count 3 charges receipt of child sexual abuse material in January 2024, roughly two years before the January 2026 conduct charged in Counts 1 and 2. Doc. 1 at 2; Doc. 9 at 2; Doc. 14 at 4. On this record, the alleged conduct spanned at least two years and involved multiple minors.

Defendant's lack of a criminal record and the sincere support of his family and instructors also carry less weight here than they might in another case, because the alleged conduct occurred online, under a false identity, and out of view of the people closest to him. Defendant's instructor candidly acknowledges that he does not know the details of the charges. Doc. 12-3 at 3. Defendant's grandmother, the person with whom he has lived since age twelve, told Pretrial Services that he does not use alcohol or drugs and was unaware whether there were firearms in her home, while Defendant reported daily drug use and that he keeps a firearm at the residence. Doc. 5 at 2–3. This does not reflect poorly on Defendant's family, but it illustrates that the people best positioned to supervise him were unaware of significant aspects of his conduct. On balance, this factor does not outweigh the others.

///

#### 4. Nature and Seriousness of the Danger Posed by Release

This factor weighs heavily in favor of detention. The Government has proffered evidence that Defendant used deception to groom a fourteen-year-old over an extended period, obtained sexually explicit images and videos from him, and successfully directed him to sexually abuse an eleven-year-old child and record it, all without being physically present. Doc. 14 at 2–4, 10–11. The Court agrees with Defendant that the seriousness of the charges alone cannot substitute for a finding of prospective danger. Doc. 12 at 5–6. But the Court's finding rests on specific evidence of what Defendant did, how he did it, and how long and how successfully he concealed it. Such evidence establishes "an identified and articulable threat" to children. *Salerno*, 481 U.S. at 751. Courts confronting comparable conduct have reached the same conclusion. *See United States v. Baker*, No. 4:23-CR-00261-BLW-2, 2023 WL 8254717, at *5 (D. Idaho Nov. 29, 2023) (Defendant's remote direction of the sexual abuse of a child to produce images posed a serious danger to other children because of "the remote method by which the conduct…was allegedly carried out.").

### D. No Condition or Combination of Conditions Will Reasonably Assure the Safety of the Community

Defendant proposes inpatient substance-use treatment, drug and alcohol testing, location and device monitoring with home detention, and residence with a third-party custodian upon completion of treatment. Doc. 12 at 6. Pretrial Services likewise recommended release to Community Bridges with similar conditions. Doc. 6 at 3–5. The Court has carefully considered these proposals and the Pretrial Services recommendation, but concludes that they would not reasonably assure the safety of the community.

First, the Court commends Defendant's willingness to enter substance-use treatment, and nothing in this Order should discourage him from pursuing it. But nothing in the record suggests that substance use was the mechanism of the charged conduct, and Defendant has not proffered any evidence or treatment directed at the conduct itself. Defendant's argument that his own childhood abuse is associated with later patterns of

abuse (Doc. 12 at 5) underscores the risk; it does not explain how substance-use treatment would address it.

Second, location monitoring and home detention would not address the danger. The alleged offenses required no travel and no physical contact with the victims. Defendant reached Minor Victims 1 and 2 remotely, from his home in Sells, and directed abuse that occurred in Tucson. A restriction on where Defendant may go does not restrict whom he may reach online. *See United States v. Woodford*, No. 21-cr-20717, 2023 WL 361778, at *11 (E.D. Mich. Jan. 23, 2023) (Sexual exploitation of minors “does not require leaving one’s residence.”).

Third, computer and internet monitoring would depend on Defendant’s good-faith compliance, and the record gives the Court concern. *See Hir*, 517 F.3d at 1092–93 (finding conditions inadequate where their effectiveness hinged on the defendant’s good-faith compliance). Monitoring software covers only the devices that are disclosed and on which it is installed. Defendant allegedly used multiple phones and multiple accounts, maintained a false identity convincing enough that his victim considered “Alexis” his girlfriend, and concealed his conduct for an extended period. Doc. 1 at 2; Doc. 14 at 3–4. The residence to which he might eventually return contains five cellphones, a tablet, two gaming consoles, and five smart televisions belonging to other household members. Doc. 5 at 2. Internet access is also available on any number of devices and networks outside the home. Where, as here, the alleged crimes depended on the internet, “the ubiquity of the internet…creates a significant obstacle to reasonably assuring the safety of any other person or the community.” *Hoilman*, 2022 WL 17640199, at *4; *see also Woodford*, 2023 WL 361778, at *11. As another court observed, it is difficult to see how a release condition restricting internet use would secure voluntary compliance when the criminal statutes prohibiting child exploitation allegedly did not. *Baker*, 2023 WL 8254717, at *5.

Fourth, there is no suitable residence or custodian for Defendant once he completes residential treatment. Pretrial Services found the Sells residence unsuitable because of its proximity to a school and to neighbors with children, and it found Defendant’s brother

unsuitable as a custodian for that reason. Doc. 6 at 2. Young children also visit that residence periodically. Doc. 5 at 2. The only alternative identified is a cousin in Tucson who may be able to assist with housing after December 2026; that residence has not been identified or vetted. Doc. 6 at 2. More importantly, a custodian's supervision offers limited protection against conduct carried out on a phone and concealed from those living in the same home. *See Woodford*, 2023 WL 361778, at *11.

Finally, the Court has given careful consideration to Pretrial Services' recommendation of release to Community Bridges. The Court notes, however, that Pretrial Services itself assessed Defendant as a danger to the community (Doc. 6 at 3); Judge Marner adopted Pretrial Services' reports but not its recommendation (Doc. 8 at 2); and the recommendation predates the Indictment, which alleges conduct dating to January 2024 and additional possession offenses involving two separate devices (Doc. 9). Exercising its independent judgment on the full record, the Court concludes that the recommended conditions, individually and in combination, would not reasonably assure the safety of the community.

## IV. CONCLUSION

Upon *de novo* review, and weighing the § 3142(e)(3)(E) presumption together with the § 3142(g) factors, the Court finds that the Government has established by clear and convincing evidence that Defendant poses a danger to the community and that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. Because detention is warranted on this ground, the Court does not reach whether Defendant poses a risk of nonappearance.

///

///

///

///

///

///

Accordingly,

**IT IS ORDERED DENYING** Defendant's Motion for Review of Magistrate Judge's Order of Detention (Doc. 12), including Defendant's request for a hearing and oral argument.

**IT IS FURTHER ORDERED AFFIRMING** the Order of Detention Pending Trial (Doc. 8). Defendant shall remain detained pending trial.

Dated this 6th day of November, 2026.

John C. Hinderaker
United States District Judge